## A08A1108. WATERS v. THE STATE.
(669 SE2d 450)

BARNES, Chief Judge.

Following the denial of his motion for new trial, Billy Gene Waters appeals his convictions for armed robbery, three counts of aggravated assault, burglary, and third degree cruelty to children. An additional count of cruelty to children was nolle prosequi, and Waters was acquitted of entering a motor vehicle and misdemeanor theft by taking. Waters contends that the evidence was insufficient, the trial court erred in admitting evidence as similar transaction and res gestae, and the trial court erred by not giving a charge on robbery by intimidation. We do not agree, and affirm.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. See *Wilson v. State*, 256 Ga. App. 741 (1) (569 SE2d 640) (2002). We neither weigh the evidence nor resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt. Id. See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So construed, the evidence shows that at approximately 3:00 a.m. on August 5, 2005, Waters entered the Hall County home of his ex-girlfriend's mother while the girlfriend was sleeping in the basement with three of the couple's four children. She woke up to find Waters standing over her with a gun. He was very angry and told her not to yell. He put the gun to his girlfriend's head, and to his own. His girlfriend testified that Waters was angry because he discovered by reading her journal that she had been sexually involved with Russell Purcell. Waters attempted to contact Purcell

using the girlfriend's phone. He also repeatedly asked her to come with him to Purcell's home, but she refused. Waters left the home, and the girlfriend ran upstairs with her children and told her mother to call the police.

When police arrived, the girlfriend provided them with a description of Waters and the car he was driving. She also informed them that Waters was going to Purcell's home in Gwinnett County. Waters called the girlfriend about 45 minutes after he left, and asked her to pick him up somewhere off Sugarloaf Parkway, but she refused. Shortly after he left the girlfriend, Waters entered a Hall County BP gas station with his t-shirt partially covering his face. He told the attendant that his truck was running hot. Waters went into the restroom, came out with paper towels covering his face, approached the attendant again, pointed a gun at him, and told him to empty the cash register. Waters forced the attendant to go to a back room, then left.

At approximately 4:30 a.m., Waters arrived at Purcell's house in Gwinnett County. Purcell was in front of his house when Waters grabbed him, held the gun to his head, and told Purcell to get "down on [his] knees." Purcell yelled, but Waters shoved the gun at his head, pulled the trigger, and shot Purcell in the back of the head. The impact threw Purcell to the ground, but he did not lose consciousness and was able to escape when his grandmother came out of the house. Police later arrested Waters after discovering him hiding behind a house. Waters was found to be in possession of several items that were stolen from three automobiles that had been broken into in that same vicinity.

1. Waters first contends that the evidence was insufficient to support his burglary conviction because it did not show that he was not authorized to be in the house, nor that he entered the house with the intent to harm his girlfriend.

OCGA § 16-7-1 provides that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ."

Both the mother and the girlfriend testified that Waters was neither invited nor authorized to be in their home the night of the incident. The girlfriend also testified that Waters was very angry during their encounter, and held a gun to her head. Even if, as Waters argues, he had no intent to assault his girlfriend when he entered the house, the intent to commit a felony necessary for the burglary conviction need not be formed at the precise moment of entry, but can be formed while the perpetrator is remaining on the premises. *Keith v. State*, 138 Ga. App. 239 (2) (225 SE2d 719) (1976).

"As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Punctuation omitted.) *Head v. State*, 254 Ga. App. 550, 552 (4) (562 SE2d 815) (2002). Accordingly, here, a rational trier of fact could have found Waters guilty of burglary beyond a reasonable doubt.

2. Pretermitting whether the trial court correctly admitted the Gwinnett County criminal acts as similar transactions, the evidence was admissible as part of the res gestae of the Hall County incidents and the trial court did not err by admitting testimony regarding the incidents.

"The [S]tate is entitled to present evidence of the entire res gestae of the crime. . . . [E]very aspect of it relevant to the crime charged may be presented at trial." *Satterfield v. State*, 256 Ga. 593, 598 (6) (351 SE2d 625) (1987).

Here, the incidents in Gwinnett County occurred within two hours of the attack and armed robbery in Hall County, and showed a pattern of conduct related to Waters's criminal acts committed during the night in question. Furthermore, these acts were relevant to show Waters's frame of mind in the time period immediately preceding and following the Hall County crimes. When there is evidence of other criminal transactions which "show a course of conduct pointing toward and leading to the crime . . . , such evidence is admissible as an exception to [the] general rule [that evidence of independent crimes is inadmissible]." *Spurlin v. State*, 228 Ga. 2, 5 (4) (183 SE2d 765) (1971); see OCGA § 24-3-3.

3. Waters also contends the trial court erred by refusing to give his requested charge on robbery by intimidation. He argues that as a lesser included offense of armed robbery, the charge should have been given because it "was the sight of the gun, not the use of the gun which prompted the [gas station attendant] to give [Waters] the money."

Robbery by intimidation is the taking of another's property by the use of threats, coercion, or fear. *Smith v. State*, 247 Ga. App. 173, 174 (543 SE2d 434) (2000); OCGA § 16-8-40 (a) (2). Armed robbery is the taking of property by use of an offensive weapon. OCGA § 16-8-41. Where, as here, the evidence in the record "shows completion only of the greater offense, it is unnecessary for the trial court to charge on the lesser offense. [Cit.]" *Jenkins v. State*, 270 Ga. 607, 608 (2) (c) (512 SE2d 269) (1999). The evidence showed a completed act of armed robbery; thus, the trial court properly refused to instruct on robbery by intimidation. See *Buice v. State*, 191 Ga. App. 7, 9 (8) (380 SE2d 741) (1989).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 7, 2008.

*Susan E. Teaster*, for appellant.
*Lee Darragh, District Attorney, Gregory E. Radics, Assistant District Attorney*, for appellee.